UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                       :

RUTH A. FOREST,                       :

                  Plaintiff,    :

                                        :

         -v-                      :

                                        :

NEW YORK STATE OFFICE OF MENTAL    :
HEALTH, SUEANN SMITH, and SHELLEY
DEPEW, (Sued in their Official Capacity    :
pursuant to 42 U.S.C. § 1983),
                                        :

                  Defendants.    :

                                        :
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>November 10, 2015</u>

13-cv-1762 (KBF)

<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

      On March 14, 2013, plaintiff Ruth A. Forest sued her employer, defendant New York State Office of Mental Health ("NYSOMH"), and two supervisors. (ECF No. 2.) Plaintiff's complaint alleged that she had been subject to gender discrimination and retaliation in violation of state and federal law. As discussed below, plaintiff's gender discrimination claims were dismissed at an earlier stage for failure to state a claim. Now before the Court is defendant's motion for summary judgment on the sole remaining claim of retaliation. (ECF No. 59.) Because plaintiff has failed to raise a triable issue of fact as to whether her protected activities were but-for causes of the employment actions she cites as materially adverse or that defendant's non-retaliatory explanations are pre-textual, defendant's motion is GRANTED.

I.      INTRODUCTION AND BACKGROUND

        A.      <u>The Events</u>

        The following facts are undisputed unless otherwise indicated.

        Plaintiff is a Registered Nurse employed by defendant NYSOMH in the

Mental Health Unit ("MHU") at Sullivan Correctional Facility, where she provides

mental health services to inmates.  (Pl.'s 56.1[1] ¶¶ 265-66; Def.'s 56.1[2] ¶¶ 1, 7.)  She

has worked there since 2006.  (Pl.'s 56.1 ¶ 266.)  Defendant Shelley Depew was the

MHU's Nurse Administrator from October 2002 to March 2014, and defendant

SueAnn Smith was the MHU's Forensic Unit Chief from December 2008 to January

2013.  (Def.'s 56.1 ¶¶ 31-32.)

        In March 2011, plaintiff filed an internal complaint with defendant

NYSOMH's Affirmative Action department, alleging gender discrimination and

retaliation arising from prior complaints plaintiff had raised.[3]  (Pl.'s 56.1 ¶ 333.)

Shortly thereafter, plaintiff went on medical leave, from which she returned in

---

[1] The notation "Pl.'s 56.1" refers to plaintiff's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 68.)  This decision relies only on those facts defendant did not dispute with citations to admissible evidence in its response. (ECF No. 75.)  <u>See</u> Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] The notation "Def.'s 56.1" refers to defendant's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 60.)  This decision relies only on those facts plaintiff did not dispute with citations to admissible evidence in her response. (ECF No. 68.)  <u>See</u> note 1, <u>supra</u>.  In many instances, plaintiff did not comply with the requirement of Local Rule 56.1(c) that a non-moving party "specifically controvert[] [the moving party's assertions] by a correspondingly numbered paragraph," but instead recounted alternative versions of events in particular paragraphs she then cited repeatedly.  (<u>See, e.g.</u>, Pl.'s 56.1 ¶¶ 11, 19-22.)  The Court should not be put in the position of trying to determine which parts, if any, of defendant's statement plaintiff actually denies.  Nonetheless, the Court has carefully parsed plaintiff's responses to defendant's statement and given plaintiff every benefit of the doubt in resolving factual disputes.

[3] As discussed below, the allegations that were the basis for the March 2011 complaint have been dismissed; this factual background only recounts allegations and events that form the basis for plaintiff's remaining retaliation claim.

January 2012.  (Def.'s 56.1 ¶ 83.)  During plaintiff's medical leave an Affirmative Action Officer investigated her complaint and found that there was "insufficient evidence to support [the] complaint."  (ECF No. 26, Exh. A.)

When plaintiff returned to work, Smith informed her that her schedule would be temporarily modified and asked her to review policy changes that had been introduced during plaintiff's leave.  (Def.'s 56.1 ¶¶ 85, 92; Pl.'s 56.1 ¶ 342.)  Plaintiff filed a union grievance in January 2012 because she had not received 30 days' notice of her schedule change; the grievance did not refer to discrimination.  (Def.'s 56.1 ¶¶ 98, 112; ECF No. 63, Exh. H.)  Plaintiff's requested remedy was a return to her pre-leave schedule, and as that schedule was back in place by the time management made a determination on the grievance in March 2012, it was deemed resolved.  (Def.'s 56.1 ¶¶ 100, 105, 111; ECF No. 61, Exh. C.)

During the first months after plaintiff's return to work, defendant's Human Resources staff requested that administrators review the lunch break policy, which required shift employees like plaintiff not to leave the facility, with all staff.  (Def.'s 56.1 ¶¶ 135-37.)  Smith and Depew notified the staff that, notwithstanding prior practice, any time spent picking up food off-site would have to be charged.  (Id. ¶¶ 136, 138; Forest Tr.[4] at 51:1-52:14.)  This was a "blanket policy [which] applied to everyone."  (Forest Tr. at 52:7-11.)

---

[4] The notation "Forest Tr." refers to the transcript of plaintiff's August 19, 2015 deposition, portions of which are available as ECF No. 63, Exh. A; ECF No. 69, Exh. A; and ECF No. 72, Exh. A.

Plaintiff alleges that during the first months after her return to work she was subjected to greater scrutiny, including in particular scrutiny over her use of red ink in patient charts in March 2012.  (Pl.'s 56.1 ¶¶ 158, 352.)  According to plaintiff, this followed her use of red pen to indicate that a patient was going on a hunger strike, which did not violate any policy.  (Id. ¶ 358; Forest Tr. at 52:22-53:9.)  Defendant alleges that red ink is customarily used in patient charts only to indicate allergies and that its proper use was discussed with all staff at a staff meeting.  (Def.'s 56.1 ¶ 161, 163.)  Although the parties disagree on this point, the existence or non-existence of a red ink policy is not material to plaintiff's retaliation claim because, as discussed below, her allegation of increased scrutiny without more does not constitute a materially adverse action even when aggregated with other acts.

In late February 2012, Depew reported to Smith that she had discovered that plaintiff had signed two forms purporting to document a patient assessment on days the patient's unit had been closed and after the patient had been discharged.  (Id. ¶¶ 169-71; Pl.'s 56.1 ¶ 361.)  Defendant's Human Resources department initiated an investigation, as part of which plaintiff was interrogated on April 10, 2012.  (Def.'s 56.1 ¶¶ 172-73.)  Plaintiff verified that she had signed the forms, but noted that another nurse, Richard Parks, had filled out the identifying information on the form.  (Id. ¶¶ 174-80; Pl.'s 56.1 ¶¶ 170, 363.)  On April 12, 2012 defendant's Human Resources department determined that plaintiff "did not exercise sound judgment" and recommended that she receive a Notice of Discipline.  (Def.'s 56.1 ¶¶ 196-97.)

4

On April 20, 2012, plaintiff filed a New York State Division of Human Rights ("DHR") Complaint against defendant, alleging that Depew and Smith had discriminated against her on the basis of her gender and retaliated against her for her March 2011 internal complaint.  (Def.'s 56.1 ¶ 113; ECF No. 63, Exh. D.) Plaintiff's DHR Complaint alleged that, inter alia, she had been "criticized or disciplined for the same offenses for which male nurses were not disciplined," male nurses had received preferential "assignments, vacations, evaluations and privileges," she had been "subjected to an 'interrogation' into a bogus charge that [she] completed a form for a patient who had already been discharged," and Depew had "slandered and defamed" plaintiff's professional reputation.  (ECF No. 63, Exh. D at 868-69.)

On May 2, 2012, plaintiff was issued a Notice of Discipline in connection with the April investigation into the two improper patient assessment forms.  (Def.'s 56.1 ¶ 198; ECF No. 63, Exh. G.)  The Notice recommended that plaintiff be suspended four weeks without pay.  (ECF No. 63, Exh. G at 83.)  Plaintiff contested the Notice, which resulted in an Agency-level hearing in August 2013.  (Def.'s 56.1 ¶¶ 199-200.) The proposed penalty was adopted at the hearing, but plaintiff and defendant later negotiated an agreement that plaintiff would instead be put on one year probation. (Def.'s 56.1 ¶¶ 201-02; Pl.'s 56.1 ¶¶ 202, 368.)

In June 2012 Smith assigned plaintiff to teach 13 weeks of medication education classes to the patients in the MHU.  (Def.'s 56.1 ¶ 206.)  Plaintiff alleges that this represented an extra week above the normal twelve; defendant alleges

that each nurse was required to teach 12 to 14 weeks and that plaintiff was assigned the same number of classes as her peers. (Pl.'s 56.1 ¶¶ 203, 380; Def.'s 56.1 ¶¶ 204-05.) As discussed below, plaintiff has entirely failed to rebut this non-retaliatory explanation for the assignment.

Plaintiff further alleges that, later in June, Depew denied a request for a scheduling adjustment. (Pl.'s 56.1 ¶ 213.) Defendant argues that there is no evidence of this denial and that plaintiff cannot recall the adjustment she allegedly requested. (Def.'s 56.1 ¶¶ 213-15.)

On August 31, 2012, Depew called plaintiff at home to inquire about a discrepancy in the MHU's syringe count. (Def.'s 56.1 ¶ 223.) Plaintiff alleges that it was not Depew's normal practice to check the syringe count, that there never was a discrepancy that day, and that Depew altered paperwork to make it appear that there had been. (Pl.'s 56.1 ¶ 219.) Defendant alleges that plaintiff failed to document the fact that she had disposed of a syringe after a patient refused a shot. (Def.'s 56.1 ¶ 219.) Plaintiff testified at her deposition that she had not documented the syringe disposal. (Forest Tr. 94:4-21.) Depew provided a copy of the relevant policy with the entire staff at their next staff meeting. (Id. ¶ 233.)

In October 2012, DHR issued a Determination and Order After Investigation as to plaintiff's April DHR Complaint. (Id. ¶ 117; ECF No. 63, Exh. E.) DHR found that there was "no probable cause to believe that the respondent [ – NYSOMH – ] ha[d] engaged in or [was] engaging in the unlawful discriminatory practice complained of." (ECF No. 63, Exh. E at 919.) The DHR Determination recounted a

number of factual findings and dismissed the matter, as "[i]nsufficient evidence exist[ed] to suggest that complainant [was] being treated differently than male employees because of her gender." (Id. at 920.)

In December 2012 the United States Equal Employment Opportunity Commission similarly dismissed plaintiff's claims against defendant, noting that it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." (Def.'s 56.1 ¶ 128; ECF No. 63, Exh. F at 857.)

On March 14, 2013, plaintiff initiated this lawsuit, representing herself pro se. (ECF No. 2.)

On April 18, 2013, plaintiff and Parks, her co-worker, argued. (Def.'s 56.1 ¶ 244.) According to plaintiff, only Parks raised his voice. (Pl.'s 56.1 ¶ 244.) The two met separately with the Director of Nursing, who advised both nurses that their behavior violated a number of policies. (Def.'s 56.1 ¶¶ 246-49.) Both employees were offered changes in the time and location of their work and advised to attend trainings to avoid similar situations. (Id. ¶ 250-53.) Plaintiff's work schedule did not change and she did not attend any training related to the incident. (Id.)

B.   Litigation History

As discussed above, plaintiff filed her complaint in this suit pro se in March 2013. (ECF No. 2.) She later acquired counsel, who amended the original complaint twice; the operative complaint was filed November 8, 2013. (ECF Nos. 11, 21.) Plaintiff's complaint included claims for gender discrimination and retaliation under Title VII against defendant New York State Office of Mental

7

Health and claims for violations of equal protection rights under 42 U.S.C. § 1983 against both Smith and Depew in their official capacities.  (ECF No. 21 at 16-17.)

The defendants moved to dismiss plaintiff's complaint.  (ECF No. 24.)  On November 24, 2014, Judge Cathy Seibel held a conference at which she ruled from the bench, partially granting and partially denying the motion to dismiss.  (MTD Tr.[5] at 27:4-10.)  Judge Seibel ruled that plaintiff's allegations,[6] read in the light most favorable to plaintiff, did not amount to "adverse employment action" as defined for Title VII discrimination claims.  (Id. at 16:2-6.)  Judge Seibel dismissed plaintiff's Title VII discrimination claims against NYSOMH and, because equal protection claims under § 1983 "must stand or fall together" with Title VII claims, dismissed the claims against Smith and Depew.  (Id. at 26:12-20.)

Judge Seibel did not, however, dismiss plaintiff's Title VII retaliation claim against NYSOMH.  In Judge Seibel's view, "[t]aken individually, many of [plaintiff's allegations] seem like 'petty slights or minor annoyances,' but they may amount to materially adverse actions, especially when aggregated."  (Id. at 24:3-6.)  Judge Seibel also determined that the temporal period between plaintiff's alleged protected activities and defendant's alleged retaliation was "not so great that the Court on a motion to dismiss should find that Plaintiff cannot establish an inference of causal connection as a matter of law."  (Id. at 26:6-8.)  Judge Seibel therefore declined to dismiss plaintiff's retaliation claim for failure to state a claim.

---

[5] The notation "MTD Tr." refers to the transcript of Judge Seibel's November 24, 2014 ruling, which is available as ECF No. 63, Exh. C.
[6] Plaintiff's operative complaint contains more allegations than those discussed above; only those events relevant to plaintiff's surviving Title VII retaliation claims are discussed in this decision.

Nonetheless, Judge Seibel dismissed any retaliation claims stemming from events that occurred before June 26, 2011, based on the statutory requirement that a plaintiff file an administrative charge within 300 days of an event in order to bring a civil action based on that event under Title VII.  (Id. at 16:22-17:17; 42 U.S.C. § 2000e-5(e)(1).)

In March 2015 this case was transferred to the Court.  (See ECF No. 43.)

In September 2015 defendant moved for summary judgment.  (ECF No. 59.)

II.   PRINCIPLES OF LAW

A.   Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment,"

because "[m]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist."  Hicks v. Baines,

593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d

at 685 ("In seeking to show that there is a genuine issue of material fact for trial,

the non-moving party cannot rely on mere allegations, denials, conjectures or

conclusory statements, but must present affirmative and specific evidence showing

that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the

outcome of the suit under the governing law"—will properly preclude the entry of

summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986) (stating that the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts").  The Court should not

accept evidence presented by the nonmoving party that is so "blatantly contradicted

by the record . . . that no reasonable jury could believe it."  Scott v. Harris, 550 U.S.

372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)

("Incontrovertible evidence relied on by the moving party . . . should be credited by

the court on [a summary judgment] motion if it so utterly discredits the opposing

party's version that no reasonable juror could fail to believe the version advanced by

the moving party.").

10

B.    <u>Title VII Retaliation Standard</u>

Title VII makes it unlawful "for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  The goal of this provision is "to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice."  <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998) (quoting <u>Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1988)).

"In order to show a <u>prima facie</u> case of retaliation in response to a motion for summary judgment, a plaintiff must submit sufficient admissible evidence to allow a trier of fact to find: (i) conduct by the plaintiff that is protected activity under Title VII; (ii) of which the employer was aware; (iii) followed by an adverse employment action of a nature that would deter a reasonable employee from making or supporting a discrimination claim; (iv) that was causally connected to the protected activity."  <u>Cox v. Onondaga Cnty. Sheriff's Dep't</u>, 760 F.3d 139, 145 (2d Cir. 2014). In this case the first, third, and fourth elements are contested.

A "protected activity" for the purposes of a Title VII retaliation claim is one taken to protest or oppose the discrimination that Title VII prohibits.  <u>See</u> 42 U.S.C. § 2000e-3(a).  An objection "need not rise to the level of a formal complaint in order to receive statutory protection."  <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d

Cir. 2000). The merits of the complaint are distinct from whether it is a protected activity: "To establish that his activity is protected under Title VII, a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

An adverse employment action supplies the basis for a prima facie retaliation claim if it "might well deter a reasonable employee from complaining about discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006). Title VII is only concerned with "retaliation that produces an injury or harm;" it does not reach "those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 67, 68. However, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010).

Proof of causation, the final element of a prima facie retaliation claim, "can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015) (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)). The

protected activity must have been the "but-for" cause of the retaliation; that is, there must be "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

"Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." Id. at 845. "[A]fter the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture. The plaintiff must then come forward with [evidence that the proffered] non-retaliatory reason is a mere pretext for retaliation." Id. (citation omitted). "The plaintiff must produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason[7] for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted).

---

[7] Although an employee need only establish a "good faith, reasonable belief" that an employment practice violates Title VII to make her complaint of that practice a protected activity, see Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996), a more demanding standard unrelated to the employee's beliefs applies to rebutting an employer's proffered non-retaliatory reason for an action taken following a protected activity.

III.     DISCUSSION

A.     <u>Events Relevant To This Claim</u>

In order to bring a civil action for Title VII retaliation, the allegedly retaliatory events must have occurred within 300 days of an administrative charge. The administrative charge in this case is plaintiff's April 20, 2012 DHR Complaint, and thus any events that occurred before June 26, 2011 are not considered. Plaintiff was on medical leave from March 2011 to January 2012, and all of the allegedly retaliatory acts not extinguished by the June 26, 2011 cutoff occurred after her return.

Between plaintiff's January 2012 return to work and her April 2012 DHR Complaint, plaintiff's schedule was changed, the lunch break policy was changed, plaintiff's supervisors discussed the use of red ink in patient charts and the investigation into whether plaintiff had incorrectly filled out paper work began and reached a preliminary determination that she had not exercised sound judgment and should receive a Notice of Discipline.  Defendant argues that none of these events preceding plaintiff's April 2012 DHR Complaint are relevant to her remaining retaliation claims.  In defendant's view, because all of plaintiff's claims based on events that occurred prior to June 11, 2011 have been dismissed, and because plaintiff's January 2012 union grievance is not a protected activity, there can be no retaliation claims for events that occurred prior to the first instance of protected activity that took place after June 11, 2011.

14

Defendant is correct that plaintiff's January 2012 union grievance was not protected activity and cannot provide the basis for a retaliation claim.  A protected activity must be one that opposes a "practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  Plaintiff's grievance concerned a change in work schedule and had no relationship to unlawful conduct under Title VII.  (See ECF No. 63, Exh. H.)  The grievance makes no mention of any discrimination; it is not a protected activity.  See Melie v. EVCI/TCI Coll. Admin., 374 F. App'x 150, 153 n.* (2d Cir. 2010) ("[U]nion grievances that do not complain of discrimination do not constitute a protected activity.")

It does not, however, follow that all events that occurred after June 11, 2011 – but prior to plaintiff's April 2012 DHR complaint – are irrelevant.  In this regard, the Court distinguishes between plaintiff's March 2011 internal complaint of gender discrimination, which was a protected activity but occurred more than 300 days before the filing of her suit, and the events alleged to have occurred in retaliation for that activity.  Thus, although the March 2011 internal complaint occurred before the June 2011 cut-off date for plaintiff's retaliation claims, any acts of retaliation that stemmed from that complaint and occurred after the June 2011 cut-off date are actionable.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"); Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 223 n.27 (E.D.N.Y. 2014) ("[F]or purposes of her Title VII retaliation claim, the statute of limitations begins

to run from the time of Defendants' allegedly retaliatory activity and not from the time of the Plaintiff's protected activity.").

The Court therefore considers all evidence of allegedly retaliatory acts after June 11, 2011.  The next issue is whether there is a triable issue of fact as to whether these acts were caused by a retaliatory motive.  To this end, the Court examines both the circumstantial evidence connecting the acts and plaintiff's protected activities and defendant's proffered non-retaliatory explanations for its actions.

> B.   Plaintiff Has Not Created A Triable Issue Of Fact As To Causation For Most Of The Allegedly Retaliatory Acts.

In order to make out a prima facie case of retaliation, plaintiff must provide proof "that the adverse action[8] would not have occurred in the absence of the retaliatory motive."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).  That is, plaintiff must put forward a triable issue on the question of whether the action was motivated by, caused by, or the result of a desire by defendant to retaliate for specific protected activities.  She can do so either by direct proof of defendant's retaliatory animus or by indirect circumstantial proof, such as a close temporal connection between the protected activity and the allegedly retaliatory act or disparate treatment of fellow employees who engaged in similar conduct.  See Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015).  In this case,

---

[8] The Court assumes, for the purposes of this motion and without resolving the question, that the allegedly retaliatory acts plaintiff identifies amount to materially adverse actions that have injured or harmed plaintiff.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006).  The Court notes that it has serious doubts that the alleged conduct, even in the aggregate, constitute materially adverse actions.

plaintiff has not raised a triable issue on this question as to most of the allegedly retaliatory acts.

First, plaintiff has not pointed to any direct evidence that defendant acted with retaliatory animus.  During her deposition, plaintiff stated that no supervisor, investigator, or other author of an allegedly retaliatory act ever told her that the act related to her complaints or lawsuit.  (Def.'s 56.1 ¶¶ 90, 167, 212; Forest Tr. at 55:20-56:10, 77:23-78:5, 82:22-83:8, 98:21-99:4.)  Indeed, plaintiff has not brought forth any admissible evidence that her employer exhibited a direct negative reaction of any kind to her complaints of discrimination.  Cf. Mandell v. Cnty. of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003) (employer's statement that employee who filed a complaint "would have to learn to keep his mouth shut" was direct evidence of retaliatory animus).

In addition, plaintiff has also failed to put forward circumstantial proof that retaliation was a but-for cause of the complained-of acts.  Comparing the timing of plaintiff's protected activities with the timing of the acts does not create an inference of retaliatory motive.  Definitionally, any retaliatory acts that occurred after June 11, 2011 but before plaintiff's April 2012 DHR Complaint would have had to have been (at most) retaliation for plaintiff's March 2011 internal complaint. These acts include the schedule change in January 2012, the change in lunch policy in early 2012, increased scrutiny of plaintiff's work in and after March 2012, and the red ink issue in March 2012, all of which occurred more than nine months after the filing of the complaint.  Even if these acts can be considered objectively injurious

17

or harmful, which is not at all clear, see Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 570 (2d Cir. 2011) ("[C]riticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." (quoting Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001))), they do not closely follow the protected activity in a manner that provides indirect proof that retaliatory animus was a but-for cause. Although the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010), the more than nine months that passed between the complaint and these actions indicates that the temporal relationship cannot, without more, establish causation.  See Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation.").

There is a closer temporal relationship between plaintiff's April 2012 DHR Complaint and some of the allegedly retaliatory acts that occurred thereafter, but not one that can give rise to a reasonable inference of causation.  The May 5, 2012 Notice of Discipline for filling out and signing inaccurate forms was issued shortly after plaintiff's April 2012 DHR Complaint, but it was the result of a review process that had begun on March 1, 2012, prior to the April complaint.  (Def.'s ¶ 172.) Therefore, the fact that the Notice closely followed the Complaint is not circumstantial evidence of retaliatory causation in this case.  See Clark Cnty. Sch.

18

Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). The same logic applies to the August 2013 agency-level hearing regarding these forms: even if the five-and-one-half months that passed between plaintiff's latest protected activity, the March 2013 filing of this lawsuit, and the hearing were close enough to suggest a temporal relationship, the fact that the hearing was the extension of a previous proceeding defeats any such inference.

In contrast to the acts discussed above, certain allegedly retaliatory acts are more proximate. The acts in June 2012, specifically plaintiff's assignment of 13 weeks of medical education classes and alleged denial of a requested scheduling adjustment, followed the April DHR Complaint by approximately two months, which could suggest a temporal relationship. The August 31, 2012 investigation into a discrepancy in the syringe count followed the April complaint by more than four months, a significant period of time but perhaps not obviously too attenuated to indicate causation. And plaintiff's May 29, 2013 supervisory counseling memorandum was issued less than three months after plaintiff filed this lawsuit on March 14, 2013. However, as discussed below, for all of these incidents defendant

19

has offered legitimate, non-retaliatory explanations for its actions which plaintiff has failed to even weakly rebut.  "The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Other avenues of indirectly proving retaliatory motive are similarly unavailing.  It is undisputed that many of the acts plaintiff labels retaliatory applied not just to plaintiff but also to her similarly situated coworkers.  Smith and Depew discussed policies relating to charged time for lunch, red ink in patient charts, and syringe counts with the entire nursing staff.  (Id. ¶¶ 136, 138, 163, 233.) Plaintiff testified that the lunch policy "was a blanket policy [that] applied to everyone."  (Forest Tr. at 52:9-10.)  After plaintiff's loud argument with Parks in April 2013 both nurses met with supervisors to discuss the incident, were told that their behavior violated policies, and were offered the chance to change work schedules and attend further trainings.  (Def.'s 56.1 ¶¶ 246-53.)  This similar treatment of similarly situated employees does not provide any indication that defendant's acts were motivated by retaliation.

C.    Plaintiff Has Entirely Failed To Rebut Defendant's Non-Retaliatory Explanations.

Even if plaintiff had successfully made out a prima facie case for some acts of alleged retaliation, defendant is able to eliminate the presumption of retaliation by articulating non-retaliatory reasons for its actions.  Zann Kwan v. Andalex Grp.

LLC, 737 F.3d 834, 845 (2d Cir. 2013).  The burden then shifts to plaintiff to bring forth evidence that defendant's purported reasons are mere pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."  Id. at 846.  Plaintiff's burden at this stage is to proffer admissible evidence from which a rational trier of fact could conclude that retaliation was more likely than not the true motivation of defendant's acts.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

As discussed above, there are certain acts that were close enough in time to plaintiff's protected activities to potentially indirectly prove a causal relationship: the assignment of 13 weeks of medical education classes, the denial of a scheduling request, the syringe investigation, and the counseling memorandum.  However, even assuming these acts separately or together could constitute materially adverse actions, defendant has furnished a legitimate, non-retaliatory explanation for each of them to which plaintiff has offered no response.

Defendant has adduced evidence that plaintiff was assigned the same number of classes as her peers and that any scheduling requests were handled according to department policy.  (Def.'s 56.1 ¶¶ 205, 216.)  Defendant has further proffered uncontested evidence that plaintiff did not ultimately teach all of the classes she was assigned and that class start and stop dates were regulated by a coordinator who defendant has never alleged was even aware of her protected activities.  (Id. ¶¶ 207-10; Pl.'s 56.1 ¶¶ 203, 207-10.)  And, as defendant points out,

plaintiff was unable to identify the requested schedule change she alleges she was denied during her deposition, an omission she has not rectified with any further evidence at this stage.  (ECF No. 65 at 19; Forest Tr. at 87:8-88:23.)  In light of defendant's unchallenged explanations, the mere fact that these incidents occurred two months after plaintiff filed her DHR Complaint does not provide a basis from which a reasonable jury could conclude that defendant retaliated against plaintiff. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Plaintiff testified that she had in fact failed to document her use of a syringe prior to Depew's initiation of an investigation into the syringe count. (Forest Tr. at 94:4-21, 97:2-6.)  She does not contest defendant's explanation that there are "numerous reasons that syringes and sharps must be accounted for in any medical setting (such as to prevent the spread of blood borne disease when a syringe is improperly discarded)" and "especially in a maximum security correctional facility, [where] a missing syringe could pose a serious threat, as it could be used as a weapon." (ECF No. 65 at 11, 20.)  Again, plaintiff's failure to provide any evidence that defendant's explanation is a mere pretext for retaliation means that she has not identified a triable issue as to whether defendant retaliated against her in this incident.  In any event, as discussed above, this incident did not result in an adverse action directed toward plaintiff but instead to an all-staff reminder of policy.

Similarly, plaintiff does not dispute that the May 29, 2013 supervisory counseling memorandum was prompted by a loud, public argument between her and her co-worker Parks in April 2013.  (Def.'s 56.1 ¶ 244; Pl.'s 56.1 ¶¶ 244, 252-57.)

22

Plaintiff has not offered any evidence suggesting that this counseling was in fact prompted by a desire to retaliate against her for filing this suit.  Furthermore, the fact that both plaintiff and Parks received the same discipline, with Parks's memorandum containing stronger language indicating that his "ongoing disrespectful, hostile, threatening, intimidating presentation will not be tolerated" further establishes the legitimacy of defendant's proffered explanation.  (Pl.'s 56.1 ¶ 257.)

Where plaintiff has provided some evidence that she was treated differently from other nurses she has also failed entirely to rebut defendant's proffered non-retaliatory explanations.  Plaintiff notes that only she was issued a Notice of Discipline in connection with forms that both she and Parks filled out, but she does not contest that Parks only filled out the identifying information on the forms, not their faulty substance.  (Def.'s 56.1 ¶¶ 174-80; Pl.'s 56.1 ¶ 363.)  Plaintiff also does not contest defendant's explanation that "[f]alse entries in a medical record are a serious matter in any medical setting," and that only her contributions and not Parks' were "false."  (ECF No. 65 at 18.)  Thus, even if plaintiff had been able to make out a prima facie case that receiving the Notice of Discipline was a retaliatory act, her failure to provide any evidence of pretext would prevent a reasonable jury from finding that defendant was motivated by retaliatory animus.

Considering all of the evidence in the light most favorable to plaintiff, a reasonable jury could not conclude that she was materially injured or harmed by actions that defendant would not have taken had it not been motivated to retaliate

for her discrimination complaints.  Plaintiff has therefore failed to create a triable issue of fact that prevents defendant from being entitled to judgment as a matter of law.

IV.     CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motion at Docket No. 59 and to terminate the action.


SO ORDERED.

Dated:        New York, New York
              November 10, 2015


_____
            KATHERINE B. FORREST
            United States District Judge

24